IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARIE L. KNARR,

                    Plaintiff,                                    **4:12CV3192**

          vs.

CAROLYN W. COLVIN, Acting                          **MEMORANDUM AND ORDER**
Commissioner of the Social Security
Administration;

                    Defendant.

          The plaintiff, Marie L. Knarr, appeals the denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381.  Filing No. 1, Complaint.  This court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).

          Knarr filed her applications for benefits on February 18, 2009.  Filing No. 13-5 at 166, 169 (Application).  The Commissioner of the Social Security Administration initially denied Knarr's claim on June 1, 2009, and again upon rehearing on August 6, 2009.  Filing No. 13-3 at 70 (Decision).  An Administrative Law Judge ("ALJ") heard the matter on June 17, 2010.  *Id.*  The ALJ denied Knarr's claim.  *Id.*  The Appeals Council denied Knarr's request for review of the ALJ's decision, stating that the judgment is final.  Filing No. 13-2 at 1-6 (AC Denial).

## I. BACKGROUND

          Knarr, born September 18, 1968, has a high school education as well as a year of vocational training.  Filing No. 13-2 at 19-20 (Hearing Transcript); Filing No. 13-3 at 80 (Decision).  Knarr's relevant past employment includes work as a cleaner and then cashier at Wal-Mart from April 2003 through August 2004, as a security guard for a

department store involving heavy lifting from July 1997 through November 2002, and as a bartender at an athletic club from September 1995 through June 1996.  Filing No. 13-2 at 54 (Hearing Transcript); Filing No. 13-6 at 343-44 (Vocational and Education History).  She has held other jobs since leaving Wal-Mart, but none amount to substantial gainful employment.  *See* Filing No. 13-2 at 54 (Hearing Transcript).  As of the date of the ALJ's decision, Knarr worked about twelve hours per week at RD's Bottle Shop.  *Id.* at 33-34, 47-48.

Knarr complains of chronic worsening back problems causing sharp, stabbing pain that radiates down through her legs, limiting her ability to lift, sit for long periods, kneel, bend, walk more than a few blocks, and reach.  *Id.* at 40; Filing No. 13-6 at 219 (Vocational and Education History); *id.* at 271 (Disability Report).  She also complains of depression, caused in part by her pain, resulting in difficulty maintaining concentration.  Filing No. 13-2 at 33, 43-44 (Hearing Transcript); Filing No. 13-6 at 271 (Disability Report).  Knarr further alleges she experiences anxiety when in crowds of more than five people.  Filing No. 13-2 at 42 (Hearing Transcript).  Additionally, she claims an abdominal hernia has caused recurrent pain and limitations.  Filing No. 17, Plaintiff's Brief at 24.  Knarr claims these impairments, in combination, render her disabled under 42 U.S.C. § 423(d)(1)(A).

Knarr underwent two separate spinal fusions, one in 1993 or 1994, and one in 2002.  *See* Filing No. 13-7, Medical Records, Pt. I at 380, 410; Filing No. 13-8, Medical Records, Pt. II 500, 506.  Since at least November 2005, her physicians have treated her for back pain.  Filing No. 13-7 at 393.  In November 2006 (Knarr's alleged disability

onset date), she fell down a flight of stairs, aggravating her spinal injuries.[1]  Filing No. 13-8 at 504-05.  At that time, testing revealed degenerative disc disease.  Filing No. 13-7 at 380.

Knarr consistently complains of back pain, and medical records indicate mild to moderate multi-level degenerative disc disease.  *See, e.g.*, *id.* at 379, 392, 389, 376, 432, 433, 440-45, 485.  Since at least April 2006, Knarr's physicians have prescribed painkillers for her back problems, usually Vicodin.  *See, e.g.*, *id.* at 394, 392, 432.  Doctors instructed her to use narcotic painkillers very sparingly to avoid forming a habit.  *Id.* at 390, 492; Filing No. 13-2 at 29 (Hearing Transcript).  Knarr reports that she uses prescription Meloxicam and over-the-counter Tylenol daily, which only reduces her pain minimally to about six on a one-to-ten scale.  Filing No. 13-2 at 27, 29-30 (Hearing Transcript).

In May 2007, Knarr's pain improved somewhat through the use of prednisone; however, her physician discontinued the treatment.  Filing No. 13-7 at 390.  She told her physician in July 2007 that her back "[was] basically fine."  *Id.*  When asked about this at the hearing, Knarr reported the discussion was about whether she needed a refill of Vicodin before moving from Pennsylvania to Nebraska.  Filing No. 13-2 at 36-37 (Hearing Transcript).  Knarr's treating physicians noted on a few occasions that the hard findings do not correlate with the severity of her pain symptoms.  Filing No. 13-7 at 389,

---

[1] Originally the claimant alleged an onset date of November 1, 2005.  Filing No. 13-5 at 166 (Application for Benefits).  The record indicates Knarr amended her application, revising the onset date to November 8, 2006.  *See* Filing No. 17 at 3, Filing No. 13-2 at 17 (Hearing Transcript).

390, 476-82, 490.   However, none of these doctors question that she actually experiences pain.[2]  *Id.*

The record supports a diagnosis of a pain disorder, explaining why Knarr might suffer from so much pain despite relatively insignificant hard findings.[3]  Filing No. 13-7 at 393, 409, 410-28.  Knarr also suffers from depression and anxiety.  *See, e.g.*, *id.* at 393, 409, 463.  Her pain contributes to the severity of her depression.  *Id.* at 393; Filing No. 13-2 at 44 (Hearing Transcript).  Knarr attends counseling for depression and anxiety at Blue Valley Mental Health Clinic, where Ms. Connie Harmon, LIMHP, LCSW, provides counseling.  Filing No. 13-7 at 456-61.  Harmon diagnosed dysthymic disorder, major depressive disorder, anxiety disorder not otherwise specified, post-traumatic stress disorder, and assessed a GAF score of 52.[4]  *Id.* at 461.  Harmon referred Knarr to her primary care physician, Dr. John Ryan at Community Physicians Clinic, for pharmaceutical treatment of her depression.  *Id.*  Dr. Michael Renner, Ph.D., performed a consultative evaluation of Knarr and concluded she has a GAF score of 45, and diagnosed pain disorder, mood disorder not otherwise specified, generalized anxiety disorder, and a personality disorder not otherwise specified.[5]  *Id.* at 409.

---

[2] The ALJ and the Commissioner mischaracterize Dr. Ryan's note: "pain is subjective MRI mildly abnormal but does not always correlate with degree of pain."  See Filing No. 13-3 at 77 (Decision).  In context, this note indicates that even if the hard findings are relatively mild, Knarr's pain is severe.  Filing No. 13-7 at 480.  The ALJ, however, used this note as proof to discredit Knarr.  Filing No. 13-3 at 77 (Decision).

[3] Somatoform disorders manifest as "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms."  20 C.F.R. § 404.1599, Subpt. P, App. 1, 12.07.

[4] A GAF score of 52 means the patient has "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attack) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR, 34.

[5] A GAF score of 45 means the patient has "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV-TR, 34.

4

Knarr asserts, and Dr. Ryan opines, that her pain, depression, and anxiety combine to render her "not able to maintain concentration or deal with coworkers or public." *Id.* at 482; *see also* Filing No. 13-2 at 33, 42 (Hearing Transcript). Knarr "does not handle stress particularly well and reacts by becoming very quiet and withdrawn or by crying." Filing No. 13-3 at 75 (Decision). Knarr reports she experiences depression symptoms two to three days per week, including suicidal ideation, moodiness, and an inability to get out of bed. Filing No. 13-2 at 43 (Hearing Transcript). Knarr's depression spells have become more frequent, and Dr. Ryan doubled her Lexapro dosage shortly before the ALJ hearing, but she reports this has not helped greatly. *Id.* at 35.

Knarr also complains of problems with an incisional hernia, first diagnosed in May 2006. Filing No. 13-7 at 394. The record contains complaints of abdominal pain in February 2008, and the development of a painful lump beginning in January of 2009. *Id.* at 432, 433. Knarr saw Dr. Ugarte for a surgical consult on March 26, 2009. *Id.* at 437. She complained of the painful lump again in December 2009, and finally underwent a repair in February, 2010. *Id.* at 484; Filing No. 13-8 at 498. Since her hearing with the ALJ, Knarr underwent a second "semi-urgent" repair on January 19, 2011.[6] Filing No. 13-8 at 519. Notes indicated Knarr felt increasing pain through December 2010 and January 2011. *Id.* at 514-19.

Knarr reports she wakes up at about six o'clock in the morning most days, does light housework such as laundry or washing dishes, and prepares simple meals for herself. Filing No. 13-6 at 214 (Function Report). She spends most of her day resting,

---

[6] Knarr argues the court should review evidence obtained after the relevant period because it proves a continuing impairment through the end of the period. Filing No. 17 at 23-24.

watching television, playing computer games, and reading.  *Id.* at 211; *id.* at 260 (Supplemental Information Form).  She does Sudoku puzzles in her free time, but reports that it takes her multiple sittings to complete one puzzle.  Filing No. 13-2 at 35 (Hearing Transcript).  She tries to socialize with friends as often as she can, but states her back pain makes this difficult.  Filing No. 13-6 at 264 (Supplemental Disability Report).  Knarr goes for daily walks, and reports she can walk three or four blocks before she needs to rest.  Filing No. 13-2 at 40 (Hearing Transcript).  She states she can sit or stand for about half an hour at a time.  *Id.*  Knarr also complains that her pain wakes her up at least twice a night.  *Id.* at 45.  She wakes up feeling tired and takes a nap every day around lunch time.  *Id.* at 45-46.

Knarr works as a cashier about twelve hours per week in four-hour shifts on non-consecutive days.  *Id.* at 47.  Knarr's boyfriend or mother usually does any required lifting or reaching tasks at her job.  *Id.* at 48.  In a four-hour shift, Knarr usually serves between twenty-two and thirty customers, and has five-minute breaks in between transactions.  *Id.* at 51.

## II.  LEGAL STANDARD

In an appeal of the denial of Social Security disability benefits, this court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole'" and "'may not reverse . . . merely because substantial evidence would support a contrary outcome.'"  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002) (alteration in original).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir.2010)).

6

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *See Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). The court may not reverse a decision supported by substantial evidence, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citation omitted). Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner's] action." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (alteration in original) (citations omitted) (internal quotation marks omitted). In determining whether substantial evidence in the record supports the decision, the court must consider evidence that both detracts from and bolsters the Commissioner's decision. *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) (citations omitted).

The court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000) (citations omitted). The court does not owe deference to the Commissioner's legal conclusions. *See Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner must perform a five-step sequential analysis described in the Social Security Regulations. 20 C.F.R. §§ 404.1520(a), 416.920(a).

7

Specifically, the Commissioner must determine:  "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy."  *Tilley v. Astrue, 580 F.3d 675, 678 n.9 (8th Cir. 2009).*  "Through step four of this analysis, the claimant has the burden of showing that she is disabled.  Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that a claimant can perform."  *Steed v. Astrue,* 524 F.3d 872, 874 n.3 (8th Cir. 2008) (citations omitted).  If the ALJ finds that a claimant is disabled or not disabled at a step, the evaluation does not go on to the next step.  20 C.F.R. § 404.1520(a)(4).

In order to evaluate the claimant's impairments at steps four and five of the analysis, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's RFC represents what he or she can do despite his or her limitations.  20 C.F.R. § 404.1545.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.  *Sims v. Apfel,* 530 U.S. 103, 111 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.").  A claimant's RFC is a medical question; therefore,

> [s]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.  In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional.

*Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004) (citations omitted) (internal quotation marks omitted).

## III.  DISCUSSION

The ALJ denied Knarr's claim primarily because he discredited her subjective complaints and the opinion of her treating physician.  *See* Filing No. 13-3 at 77, 79 (Decision).  The ALJ followed the five-step analysis required under 20 C.F.R. §§ 404.1520(a), 416.920(a).  *See id.*

First, the ALJ acknowledged Knarr has not engaged in substantial gainful activity since her alleged onset date.  *Id.* at 72.  Second, the ALJ found the plaintiff's impairments severe when taken in combination.  *Id.* at 73.  Then, the ALJ determined none of Knarr's individual impairments rise to the severity of those listed in 20 C.F.R § 404, Subpt. P, App. 1.  *Id.* at 74.  For this step of the analysis, the ALJ considered listings for disorders of the spine, affective disorders, anxiety-related disorders, and personality disorders.  *Id.* at 74-75.  The ALJ did not consider pain disorders, noting that "[n]otwithstanding Dr. Renner's diagnosis, I do not include a pain disorder as a distinct separate impairment.  Instead I consider the claimant's complaints of pain in connection with her medically determinable physical impairments."  *Id.* at 73.

The ALJ continued to steps four and five of the analysis after determining Knarr has the RFC to perform sedentary work,

> in that she can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for two hours in an eight-hour day; and sit for six hours in an eight-hour day.  She can frequently kneel and crawl, and she can occasionally climb, balance, stoop and crouch.  She must avoid concentrated exposure to vibration and hazards.  In addition, she is able to perform simple, repetitive tasks.

*Id.* at 76.  In evaluating Knarr's RFC, the ALJ highlighted notes from Knarr's doctors indicating her physical injuries did not warrant the severity of her pain, and that she is able to heel and toe walk.  *Id.* at 77-78.  The ALJ noted that Knarr primarily uses over-

the-counter painkillers, and that she uses narcotic painkillers only sparingly.  *Id.* at 78.  Therefore, the ALJ concluded, she must not experience much pain.  *Id.*

The ALJ discredited Knarr's complaints of depression because she failed to seek the care of a psychiatrist or psychologist.  *Id.*  The ALJ did not give Dr. Ryan's statements any weight concerning Knarr's depression, asserting that Dr. Ryan did not treat Knarr for mental conditions.  *Id.*  The ALJ also asserts that Dr. Ryan's opinion concerned "an issue reserved to the Commissioner."  *Id.* at 79.  The ALJ also did not give any weight to Ms. Harmon's opinion because LCSWs are not qualified to establish medically determinable impairments under 20 C.F.R. § 404.1513.  *Id.* at 73.  The ALJ also discredited Knarr's complaints of physical and mental impairments on the basis of her daily activities, such as her job, her ability to watch crime dramas, to do Sudoku puzzles, and to perform basic housecleaning.[7]  *Id.* at 79.  The ALJ also concluded Knarr's hernia only caused symptoms from December 2009 to February 2010.  *Id.* at 78.

Based on this RFC, the ALJ found Knarr unable to perform past relevant work.  *Id.* at 80.  The ALJ determined, however, that Knarr is capable of other substantial gainful employment—notably the jobs of Bonder, Electronics (DOT 726.685-066), Touch-Up Screener (DOT 726.684-110), and Order Clerk, Food and Beverage (DOT 209.567-014).  *Id.* at 81.  Because the ALJ determined Knarr is capable of engaging in substantial gainful activity, he concluded Knarr is not disabled.

## A.    The ALJ had substantial evidence to determine no disability due to hernia.

The ALJ determined Knarr's abdominal hernia only caused symptoms for a few months.  Filing No. 13-3 at 78 (Decision).  During the relevant period, Knarr complained

---

[7] The ALJ also pointed to the fact that Knarr went on a camping trip in August 2006.  Filing No. 13-3 at 79 (Decision).  However, as noted above, Knarr amended her onset date to November 2006.  *See supra* note 1.

of abdominal pain in February 2008, March 2009, December 2009, and February 2010. Filing No. 13-7 at 432, 433, 437, 484; Filing No. 13-8 at 498.  In March 2009, Knarr saw Dr. Fernando Ugarte for a surgical consult.  Filing No. 13-7 at 432.  She complained of a painful lump she had first noticed in January of that year.  *Id.* at 433.  Knarr sought a second opinion in December 2009, and finally underwent a surgical repair in February 2010.  *Id.* at 484; Filing No. 13-8 at 498.  The record contains no indications that the abdominal hernia impaired Knarr's abilities, or that it even caused frequent symptoms. Knarr's application materials do not mention her abdominal pain or hernia.[8]   *See generally,* Filing No. 13-6 at 222-26 (Disability Report – Field Office); *id.* at 297-302 (Disability Report, Appeals).  Therefore, the ALJ had substantial evidence to disregard Knarr's hernia.

Knarr submitted additional evidence after the ALJ hearing.  The court agrees with the Commissioner's assertion that the new records do not have evidentiary value concerning the relevant period.   Filing No. 24, Defendant's Brief, at 16.   The new records describe a "sudden onset" of pain requiring a "semi-urgent" repair.   Filing No. 13-8 at 514-16.  Although Knarr had seen Dr. Robert Fitzgibbons for some hernia pain prior to the "sudden onset," she only rated her increased pain between one and five on a scale of ten.  *Id.*  Therefore, the Appeals Council properly determined the new records do not necessitate remanding Knarr's case to the ALJ.  *See* Filing No. 24 at 16.

## B.    The ALJ erred in finding no disability from remaining impairments.

*1.    The ALJ erred in discrediting Knarr's subjective complaints when determining RFC.*

---

[8] Knarr did include her February 2010 hernia repair in a Medical Treatment form, but never claimed she still experiences pain or that the hernia impaired her ability to work.  Filing No. 13-7 at 340.

The ALJ must evaluate subjective complaints based on the claimant's credibility.

*Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007).

The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
1) the claimant's daily activities;
2) the duration, frequency and intensity of the pain;
3) precipitating and aggravating factors;
4) dosage, effectiveness and side effects of medication;
5) functional restrictions.
The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).   "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7P at 1.

"A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."  *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).  However, the ALJ may not discredit the claimant's subjective complaints because of a failure to pursue treatment without first considering explanations offered or other information in the record.  SSR 96-7P at 7.

"An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole."  *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (citations omitted).  A claimant may have disabling pain and still be able to

perform some daily home activities. *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work" (internal quotation marks omitted) (citations omitted)). The consistency of the claimant's various statements and the consistency between statements and other evidence provides a "strong indication" of the credibility of the claimant's subjective claims. SSR 96-7P.

Knarr consistently complains of lower back pain radiating down her leg; she does not offer any inconsistent accounts that might justify discrediting her. *See, e.g.*, Filing No. 13-7 at 389, 390, 392, 432, 485; Filing No. 13-8 at 502. Knarr's doctors have consistently treated her for this pain, prescribing narcotic painkillers. *Id.* Although doctors have opined that Knarr's physical injuries should not produce the level of pain she complains of, they nevertheless recognize that "her back [is] severe for her in pain." Filing No. 13-7 at 390; *see also infra* Part III.B.3 (discussing overwhelming evidence in support of a pain disorder characterized by lack of organic findings).

The ALJ discredits Knarr's subjective complaints based, in part, on notes from Knarr's prior treating physician, Dr. Jeffrey Hassel. Filing No. 13-3 at 74 (Decision). In May 2007 and again in July 2007, Knarr made statements that indicated she felt better. Filing No. 13-7 at 390. In May, Knarr noted that the use of prednisone made her "absolutely pain free," but Dr. Hassel then discontinued the treatment. *Id.* In July, Knarr visited Dr. Hassel to inform him of her plans to move to Nebraska. *Id.* She reported her back "[was] basically fine," a statement Knarr says related to her relative ability to move halfway across the country, considering she still had refills left on her pain medication. *Id.*; Filing No. 13-2 at 36-37 (Hearing Transcript). These isolated notes do not negate

Knarr's complaints of long-term pain—on the whole, Knarr complains frequently of the same pain symptoms. *See, e.g.*, Filing No. 13-7 at 389, 390, 392, 432, 485; Filing No. 13-8 at 502. Dr. Hassel's notes do not outweigh the "strong indication" of credibility due to Knarr's consistency.

The ALJ also cited the notes of Dr. Daniel Tomes, who performed a neurological exam of Knarr. Filing No. 13-3 at 78 (Decision). Dr. Tomes identified "some slight stenosis at L4-5, but I do not think it is severe enough to warrant her back pain symptoms." Filing No. 13-7 at 490. The ALJ used this note as proof that the record contradicts Knarr's pain complaints. However, Dr. Tomes went on to state that he believes her pain "is mediated by myofascial irritation," not that she is exaggerating her pain. *Id.* at 492.

The ALJ also asserts that Knarr's daily activities prove her pain does not actually impair her ability to engage in substantial gainful activity. Filing No. 13-3 at 79 (Decision). Although the ALJ may consider the claimant's daily activities under *Polaski*, the activities "[provide] little or no support for the finding that a claimant can perform full-time competitive work." *Burress*, 141 F.3d at 881. The ALJ notes Knarr's ability to do some light housework, solve Sudoku puzzles, watch crime dramas, take short walks, socialize, and work part-time. Filing No. 13-3 at 79 (Decision). However, the ALJ failed to describe the limited extent to which Knarr engages in these activities: she only walks for three to four blocks at a time, takes multiple sittings to complete one puzzle, does not see friends as frequently as she would like, needs help at work, cannot work consecutive days, and interacts only minimally with customers. *See supra* Part I (listing Knarr's daily activities and limitations). Knarr's very limited daily activities do not

14

constitute sufficient evidence to outweigh the overwhelming proof that she experiences frequent, severe pain.

Finally, the ALJ opines that Knarr's relatively conservative course of treatment and her failure to pursue psychiatric care indicate that she exaggerated her impairments.  Filing No. 13-3 at 78.  ALJs may not discredit claimants for a failure to seek treatment without first considering explanations for the lack of treatment.  SSR 96-7P at 7.  Examples of explanations that may support a claimant's credibility include but are not limited to: structuring of daily activities to minimize symptoms, symptoms may be relieved by over-the-counter medications, the choice not to take prescription medications in order to avoid side effects, inability to afford or access treatment, advice from a medical source indicating there exist no further treatment options, or treatment being contrary to religious beliefs.  *Id.* at 8.  Knarr offered acceptable reasons, supported by the record, for the lack of treatment the ALJ notes.

Knarr uses pain medications very sparingly because her doctors advised conservative use to avoid forming an addiction.  Filing No. 13-2 at 29 (Hearing Transcript); Filing No. 13-7 at 485, 492.  Knarr states she uses narcotic painkillers only when her pain is very bad; she uses non-narcotic pain treatments daily, which bring her pain level down to about six on a scale of ten.  Filing No. 13-2 at 29-30 (Hearing Transcript); Filing No. 13-7 at 433.

Knarr explains that she has not pursued further pain treatment (such as a nerve conduction study or injections) or psychological treatment because she cannot afford it.  Filing No. 13-2 at 32 (Hearing Transcript).  The Commissioner argues that because Knarr could afford some treatment (for example, MRIs and hernia repairs), she must be able to afford more treatment.  Filing No. 24, Defendant's Brief at 18.  This argument

15

contradicts the record.  Knarr's treating physicians note she cannot afford some of the treatment they recommended.  Filing No. 13-7 at 395, 460, 485.  Furthermore, Social Security Administration records show Knarr's Federal Insurance Contributions tax (FICA) earnings amount to only about $6,126.00 for 2006 through 2008.  Filing No. 13-5 at 189 (Summary Earnings Query).  Knarr works about twelve hours per week at $6.55 per hour.  Filing No. 13-6 at 234 (Work Activity Report).  Knarr lives in a small town.  Filing No. 17, Plaintiff's Brief at 25.

The ALJ argues that Knarr's current treatment manages her symptoms, making her able to engage in substantial gainful employment.  Filing No. 13-3 at 78 (Decision).  However, at a pain level of six, Knarr's abilities are still greatly limited.  *See supra* pp. 13-14.  Similarly, Knarr continues to experience depression and anxiety symptoms, despite pharmaceutical treatment.  Filing No. 13-2 at 35 (Hearing Transcript).  Clearly, Knarr's current courses of treatment do not successfully manage her symptoms or alleviate her impairments.  In fact, Knarr still experiences severe symptoms and her doctor has increased her anti-depressant dosage.  *Id.* at 35; Filing No. 13-7 at 457.

The record, taken as a whole, overwhelmingly supports the credibility of Knarr's complaints.  Knarr consistently and frequently complains of pain, her doctors treat her for it, her friends and family are familiar with her pain complaints, and her daily activities indicate real limitations.  Although the record does not contain hard findings to support the specific severity of Knarr's pain, the Social Security Rulings specifically state that an ALJ cannot use a lack of evidence to discredit a claimant's subjective complaints.[9]  SSR

---

[9] *See also infra* Part III.B.3 (discussing diagnosis of pain disorder, a distinct separate impairment characterized by physical symptoms, such as pain, that do not correlate to physical findings).  The ALJ wrongfully chose not to include the diagnosis of a pain disorder in his assessment, and then used the lack of physical findings (the very basis for the diagnosis) to discredit Knarr's well-supported complaints of pain.

96-7P at 1.   Nothing in the record supports the ALJ's opinion that Knarr has exaggerated her symptoms.   The ALJ should have applied a more restrictive RFC, considering that Knarr reports she can only walk three or four blocks, and that she cannot sit or stand for more than about half an hour due to her pain.

2.     *The ALJ erred in failing to give treating source medical opinions controlling weight when determining RFC.*

The ALJ must give controlling weight to a treating doctor's medical opinion if supported by substantial evidence in the record.   20 C.F.R. § 404.1527(c)(2).   "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).   An ALJ cannot substitute his opinion for the opinions of medical professionals.   *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The ALJ gives no weight to Dr. Ryan's medical opinion.   Filing No. 13-3 at 79 (Decision).   First, the ALJ does not credit Dr. Ryan's statement that Knarr cannot engage in substantial gainful employment because that is a decision reserved for the Commissioner.   *Id.*   However, the form Dr. Ryan filled out contains an introductory paragraph describing the definition of "disability" and "substantial gainful employment," and then asks, "[i]n your opinion Doctor, is Ms. Knarr capable of engaging in full time competitive labor at a sedentary level as described above?  Please explain."  Filing No. 13-7 at 482 (Medical Questionnaire).

Contrary to the ALJ's assertion, Dr. Ryan responds with not only a legal conclusion, but also medical observations: "No—chronic back pain & depression not able to maintain concentration or deal with coworkers or public."  *Id.*  In the context of

17

the question and Dr. Ryan's other responses, the ALJ should have given the opinion controlling weight because the record supports it.   The record does not contain any contrary opinions supported by greater evidence.

Next, the ALJ gave no weight to Dr. Ryan's opinion of Knarr's mental impairments because he did not treat her for these conditions.   Filing No. 13-3 at 79 (Decision).   However, Dr. Ryan did treat Knarr for her mental conditions.   Dr. Ryan referenced Knarr's "major depression" in his notes, and managed her pharmaceutical care.   Filing No. 13-7 at 432, 461, 476.   The ALJ should have given controlling weight to Dr. Ryan's medical opinion.

The ALJ also gave no weight to Ms. Harmon, who treated Knarr at Blue Valley Mental Health Clinic for depression and anxiety.   Filing No. 13-3 at 73 (Decision).   The ALJ correctly stated that a social worker (LCSW) cannot establish medically determinable impairments under 20 C.F.R. §§ 404.1513 and 416.913.   *Id.*   The ALJ failed to mention that Ms. Harmon is also a Licensed Mental Health Professional (LIMHP).   Filing No. 13-7 at 456.   Furthermore, the ALJ failed to state that even LCSWs may provide evidence for the extent and severity of already established impairments. 20 C.F.R. §§ 404.1513 and 416.913.   The record contains overwhelming evidence that Knarr suffers from depression and anxiety.   *See, e.g.*, Filing No. 13-7 at 393, 432, 456, 463; Filing No. 13-8 at 502.   Even the State Agency consultants identified Knarr's mental impairments.   Filing No. 13-7 at 409, 410-28.   Nothing in the record indicates that Knarr does not suffer from mental impairments or that treatment actually manages her impairments.   Therefore, Ms. Harmon's records should have received proper consideration as evidence supporting the severity of Knarr's depression and anxiety.

3.      *The ALJ erred in disregarding diagnosis of pain disorder.*

The overwhelming evidence in the record, including the opinions of State Agency consultants, suggests Knarr suffers from a pain disorder.  Filing No. 13-7 at 393, 409, 410-28.  Pain disorders manifest as "physical symptoms [such as pain] for which there are no demonstrable organic findings or known physiological mechanisms."  20 C.F.R. § 404.1599, Subpt. P, App. 1, 12.07.

The ALJ noted "[t]he State Agency psychological consultants analyzed the evidence, in part, under section 12.07, the listing for somatoform disorder.  Yet other than in these analyses, I find no evidence that any medical sources diagnosed a somatoform disorder."  Filing No. 13-3 at 73 (Decision) (citations omitted).  However, notes from a November 2005 doctor visit mention Knarr's "pain syndrome."  Filing No. 13-7 at 393.  Glenda Cottam, Ph.D., J.D., a non-examining consultant, also noted the existence of a pain disorder, even though it did not rise to the severity of a listing.  *Id.* at 421.  Additionally, Dr. Renner's evaluation includes "Pain Disorder associated with both psychological factors and general medical condition" as one of the diagnoses.  *Id.* at 409.  Knarr consistently complained of severe pain.  *See supra* Part III.B.1 (discussing the credibility of Knarr's subjective complaints).

Nothing in the record contradicts the diagnosis of a pain disorder.  The ALJ erred by giving no weight to the opinions of both treating and consulting medical sources when there exists no indication these opinions are incorrect.  The ALJ fails to recognize a pain disorder, and then discredits Knarr's complaints of pain.  Filing No. 13-3 at 73, 77-78 (Decision).  By dismissing the diagnosis of a pain disorder, the ALJ made a decision contradicted by the evidence, and then discounted the symptoms of the disorder.

4.      *The Commissioner failed to meet his burden at step five by neglecting to include all impairments supported by substantial evidence in a hypothetical question.*

An ALJ will often ask hypothetical questions of a vocational expert to help determine whether a sufficient number of jobs exist in the national economy that a person with the claimant's RFC can perform.   A hypothetical question posed to a vocational expert must precisely set out all the claimant's impairments as supported by the evidence.   *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996).   "A hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies."   *Id.*   Testimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the ALJ's decision.  *Id.* at 296.

As discussed, the ALJ failed to credit Knarr and her treating medical sources. *See supra* Part III.B.1-2.   If the ALJ had given these sources the controlling weight required, at a minimum Knarr's RFC would have contained a limitation of her ability to concentrate and to deal with coworkers and the public.   The vocational expert testified that a person with these limitations and the remaining impairments listed in the ALJ's RFC would not be able to engage in any substantial gainful employment.   Filing No. 13-2 at 57 (Hearing Transcript).

Further, if the ALJ had properly assessed the overwhelming evidence in the record, he would have applied many more limitations to Knarr's RFC.   The record indicates Knarr simply cannot work full time.   *See generally supra* Part I.  The ALJ failed to pose a hypothetical question to the vocational expert that included the well-supported, severe limitations on Knarr's abilities: her inability to stand, sit, or walk for prolonged periods of time (the ALJ determined Knarr could stand for two hours and sit

for six), her inability to work consecutive days, her anxiety around groups of more than five people, her inability to handle stress well, and her extreme depression symptoms such as having trouble getting out of bed about twice per week.  *Id.*  Because the ALJ did not pose these limitations to the vocational expert, the Commissioner has failed to meet his burden to prove that Knarr can engage in substantial gainful activity.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary."  *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000).  The court determines that the record overwhelmingly supports a finding of disability.  Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED that:

1.   The decision of the Commissioner is reversed.

2.   Knarr's appeal is granted.

3.   This action is remanded to the Commissioner with instructions to award benefits.

4.   A separate Judgment will be issued in conjunction with this Memorandum and Order.

5.   Any motion for attorney fees shall be filed within 30 days of the date of this order; any objection thereto shall be filed within 30 days thereafter.

Dated this 3rd day of September, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

21